UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KEVIN E. CANDLER,

                    Petitioner,

v.                                      Case No. 3:15-cv-8-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

## ORDER

### I. Status

Petitioner Kevin E. Candler, an inmate of the Florida penal system, initiated this action on January 6, 2015, by filing a pro se Petition for Writ of Habeas Corpus (Doc. 1) under 28 U.S.C. § 2254. In the Petition, Candler challenges a 2009 state court (Duval County, Florida) judgment of conviction for dealing in stolen property. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Doc. 20) with exhibits (Resp. Ex.). On May 20, 2015, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 7), admonishing Candler regarding his obligations and giving Candler a time frame in which to submit a reply. Candler submitted a brief in reply. See Petitioner's Response to Respondents' Answer (Reply; Doc. 25). This case is ripe for review.

## II. Procedural History

On September 22, 2008, the State of Florida charged Candler with burglary (counts one and four), resisting an officer with violence (count two), and dealing in stolen property (count three). See Resp. Ex. A at 87-88, Third Amended Information. Candler proceeded to a jury trial in June 2009, see id., Transcript of the Jury Trial (Tr.), at the conclusion of which, on June 17, 2009, the court found him guilty of resisting an officer without violence, a lesser included offense of count two, and dealing in stolen property (count three), and not guilty of burglary (counts one and four), as charged in the Information. See id. at 138-41, Verdicts. On July 23, 2009, the court sentenced Candler to a term of imprisonment of thirty years for dealing in stolen property, and to a term of imprisonment of twelve months (with credit for 365 days for time served) for resisting an officer without violence. See id. at 158-64, Judgment.

On direct appeal, Candler, with the benefit of counsel, filed a brief, arguing that the trial court erred when it denied his motion to suppress as to the impermissibly suggestive pretrial identification. Resp. Ex. B. The State filed an answer brief. Resp. Ex. C. On August 2, 2011, the appellate court affirmed Candler's conviction per curiam, see Candler v. State, 66 So.3d 941 (Fla. 1st DCA 2011); Resp. Ex. D, and the mandate issued on August 18, 2011, see Resp. Ex. E.

On February 14, 2012, Candler filed a pro se petition for writ of habeas corpus in the appellate court. See Resp. Ex. R. He asserted that appellate counsel was ineffective because she failed to argue on direct appeal that the trial court erred when it denied Candler's motion for judgment of acquittal on the insufficiency of the evidence as to dealing in stolen property. The appellate court denied the petition on the merits on March 8, 2012, see Candler v. State, 135 So.3d 297 (Fla. 1st DCA 2012); Resp. Ex. S, and later denied his motion for rehearing on April 17, 2012, see Resp. Exs. T; U.

On June 18, 2012, Candler filed a pro se petition for writ of habeas corpus in the Florida Supreme Court. See Resp. Ex. J. The court transferred the case to the circuit court on August 23, 2012, for its consideration as a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. See Resp. Ex. K. He filed an amended motion for post-conviction relief (Rule 3.850 motion) on October 22, 2012. See Resp. Ex. L at 1-24. In his Rule 3.850 motion, he asserted that counsel was ineffective because he failed to: present a more artful motion for judgment of acquittal (ground one), and object to the trial court giving a faulty jury instruction (ground two). Additionally, he stated that the cumulative effect of counsel's errors entitled him to relief (ground three). The circuit court denied the Rule 3.850 motion on April 30, 2013. See id. at 25-91. On October 29, 2014, the

appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> <u>Candler v. State</u>, 152 So.3d 567 (Fla. 1st DCA 2014); Resp. Ex. N, and later denied Candler's motion for rehearing on December 16, 2014, <u>see</u> Resp. Exs. O; P. The mandate issued on January 2, 2015. <u>See</u> Resp. Ex. Q.

During the pendency of the post-conviction proceedings, Candler filed a pro se petition for a new appeal in the appellate court on March 5, 2013. <u>See</u> Resp. Ex. F. He asserted that appellate counsel was ineffective because she failed to argue on direct appeal that the trial court erred in denying Candler's motion to dismiss based on a violation of Florida Rule of Criminal Procedure 3.140(g) (ground one), and that trial counsel was ineffective because he failed to properly cross-examine and impeach Detective Ardizzoni (ground two). The appellate court denied the petition on the merits on March 27, 2013. <u>See</u> Resp. Ex. G. Candler filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court on April 21, 2013. <u>See</u> Resp. Ex. H. The Florida Supreme Court dismissed the case for lack of jurisdiction on June 17, 2013. <u>See</u> <u>Candler v. State</u>, 118 So.3d 219 (Fla. 2013); Resp. Ex. I.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S.Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Candler's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas

corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted); see also Johnson v. Williams, 568 U.S. 289, --, 133 S.Ct. 1088, 1096 (2013).[1] Thus, the state court need not issue an opinion

---

[1] The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see

explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

also Johnson, 133 S.Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances . . . ." Johnson, 133 S.Ct. at 1096.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S.Ct. 2298 (2017); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made"); Landers v.

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S.Ct. 1103 (2017).

<u>Warden, Att'y Gen. of Ala.</u>, 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" <u>Wilson</u>, 834 F.3d at 1235 (quoting <u>Richter</u>, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>see also</u> <u>Wilson</u>, 834 F.3d at 1235. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. <u>Wilson</u>, 834 F.3d at 1239; <u>see</u> <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir. 2017), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u>, No. 17-512 (Sept. 29, 2017).[3] However, in <u>Wilson</u>, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

---

[3] Although the United States Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in <u>Wilson</u> remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." <u>Butts</u>, 850 F.3d at 1205 n.2.

> even when the opinion of a lower state court
> contains flawed reasoning, [AEDPA] requires
> that [the federal court] give the last state
> court to adjudicate the prisoner's claim on
> the merits "the benefit of the doubt,"
> <u>Renico</u>,[4] 559 U.S. at 773, 130 S.Ct. 1855
> (quoting <u>Visciotti</u>,[5] 537 U.S. at 24, 123
> S.Ct. 357), and presume that it "follow[ed]
> the law," <u>Donald</u>,[6] 135 S.Ct. at 1376 (quoting
> <u>Visciotti</u>, 537 U.S. at 24, 123 S.Ct. 357).

<u>Id.</u> at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). "This standard is 'meant to be' a difficult one to meet." <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 864 F.3d 1261, 1274 (11th Cir. 2017) (quoting <u>Richter</u>, 562 U.S. at 102). Thus, to the extent that Candler's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[4] <u>Renico v. Lett</u>, 559 U.S. 766 (2010).

[5] <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002).

[6] <u>Woods v. Donald</u>, 135 U.S. 1372 (2015).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S.Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court

> may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## C. Ineffective Assistance of Appellate Counsel

The two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit has stated:

> To prevail on a claim of ineffective
> assistance of appellate counsel, a habeas
> petitioner must establish that his counsel's
> performance was deficient and that the
> deficient performance prejudiced his defense.
> <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668,
> 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
> (1984); <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>,
> 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims
> of ineffective assistance of appellate counsel
> are governed by the same standards applied to
> trial counsel under <u>Strickland</u>.") (quotation
> marks omitted). Under the deficient
> performance prong, the petitioner "must show
> that counsel's representation fell below an
> objective standard of reasonableness."

13

> _Strickland_, 466 U.S. at 688, 104 S.Ct. at
> 2064. "The standards created by _Strickland_ and
> § 2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly
> so." _Harrington_, 562 U.S. at 105, 131 S.Ct. at
> 788 (quotation marks and citations omitted);
> _see also_ _Gissendaner v. Seaboldt_, 735 F.3d
> 1311, 1323 (11th Cir. 2013) ("This double
> deference is doubly difficult for a petitioner
> to overcome, and it will be a rare case in
> which an ineffective assistance of counsel
> claim that was denied on the merits in state
> court is found to merit relief in a federal
> habeas proceeding.") (quotation marks and
> alteration omitted). "If this standard is
> difficult to meet, that is because it was
> meant to be." _Harrington_, 562 U.S. at 102, 131
> S.Ct. at 786.

_Rambaran v. Sec'y, Dep't of Corr._, 821 F.3d 1325, 1331 (11th Cir.

2016), _cert._ _denied_, 137 S.Ct. 505 (2016).

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was
> "within the wide range of reasonable
> professional assistance." _Id._[7] at 689, 104 S.
> Ct. 2052. Appellate counsel has no duty to
> raise every non-frivolous issue and may
> reasonably weed out weaker (albeit
> meritorious) arguments. _See_ _Philmore v._
> _McNeil_, 575 F.3d 1251, 1264 (11th Cir. 2009).
> "Generally, only when ignored issues are
> clearly stronger than those presented, will
> the presumption of effective assistance of
> counsel be overcome." _Smith v. Robbins_, 528
> U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756
> (2000) (quoting _Gray v. Greer_, 800 F.2d 644,
> 646 (7th Cir. 1986)); _see also_ _Burger v. Kemp_,
> 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d
> 638 (1987) (finding no ineffective assistance
> of counsel when the failure to raise a
> particular issue had "a sound strategic
> basis").

---

[7] _Strickland_, 466 U.S. at 689.

*Overstreet*, 811 F.3d at 1287; see also *Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (stating "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted); see *Philmore v. McNeil*, 575 F.3d 1251, 1264-65 (11th Cir. 2009) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Candler asserts that the trial court erred when it denied his motion to suppress the out-of-court and in-court identifications. See Petition at 4-10. Candler argued this issue on direct appeal, see Resp. Ex. B, the State filed an answer brief, see Resp. Ex. C, and the appellate court affirmed Candler's conviction per curiam, see *Candler*, 66 So.3d 941; Resp. Ex. D.

In its appellate brief, the State addressed the claim on the merits, <u>see</u> Resp. Ex. C at 4-8, and therefore, the appellate court may have affirmed Candler's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Candler is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents an issue of federal constitutional dimension,[8] Candler's claim, nevertheless, is without merit.[9] Upon review, the trial court properly denied Candler's motion to suppress the out-of-court and in-court identifications. The Supreme Court has recognized "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances

---

[8] <u>See</u> Response at 5-6; Reply at 2.

[9] Candler acknowledges that the claim is without merit. <u>See</u> Reply at 2. Nevertheless, he elects to pursue the claim. <u>See</u> Response to Court Order (Doc. 27).

leading the witness to identify a particular person as the perpetrator of a crime." Perry v. New Hampshire, 565 U.S. 228, 232 (2012). An out-of-court identification is subject to exclusion if the identification procedure was unduly suggestive such that it created a substantial risk of misidentification. Neil v. Biggers, 409 U.S. 188, 199 (1972). In determining whether an identification violates due process, a court undertakes a two-part analysis. "First, we must determine whether the original identification procedure was unduly suggestive. . . . If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable." Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988) (citing Biggers, 409 U.S. at 199). In Biggers, the Supreme Court identified five factors to be considered in determining whether the identification was reliable. They are: the witness's opportunity to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the description of the suspect, the level of certainty of the identification, and the length of time between the crime and the identification. See Biggers, 409 U.S. at 199. In Manson v. Brathwaite, 432 U.S. 98 (1977), the United States Supreme Court stated that absent "a very substantial likelihood of irreparable misidentification," the identification of a suspect by a witness is

evidence for the jury to weigh. _Id._ at 116 (citation and internal

quotation marks omitted).

> We are content to rely upon the good sense and
> judgment of American juries, for evidence with
> some element of untrustworthiness is customary
> grist for the jury mill. Juries are not so
> susceptible that they cannot measure
> intelligently the weight of identification
> testimony that has some questionable feature.

_Id._

In the instant case, Candler, with the benefit of counsel,

filed a motion to suppress. _See_ Resp. Ex. A at 82-85. In the

motion, Candler requested that the trial court suppress any

pretrial identification as well as any in-court identification of

him by Karrina Wood (a neighbor and eyewitness) and Robert Brozoski

(one of the victims). The trial court held a hearing on October 23,

2008, at which Candler appeared pro se, and Officer Myers, Wood,

and Brozoski testified. _See_ _id._, Transcript of the Suppression

Hearing (Supp. Tr.).

Officer Myers testified that he was speaking to the victims

when Officer Soucek called him for assistance. _See_ _id._ at 7-8.

According to Myers, the be-on-the-lookout dispatch described the

suspect as a black male wearing black shorts and a yellow hat and

possibly a black shirt, _see_ _id._ at 8-9, and the black male suspect

was wearing black shorts, but no hat or shirt, when Myers arrived

to assist Officer Soucek, _see_ _id._ at 11. Myers described his

initial encounter with the suspect on Gaillardia Road, which is approximately one-half of one mile from the crime scene. See id. at 27.

> We were going to detain the defendant to conduct a showup at the location on Galardia [sic], but I never made it a point of explaining that to the defendant because he was belligerent and refused to cooperate.
>
> . . . .
>
> When I approached the defendant, like I said, he was belligerent, told me to get the f..k off his property. And I didn't even get a chance to explain myself, what was going on. And then as I approached the defendant, I was on one side and Officer Soucek was on the other side. And at that point the defendant came up swinging, striking my chest. And that's when the struggle ensued.
>
> . . . .
>
> At that time [Candler] w[as] placed under arrest for battery on a law enforcement officer. But to finish out the investigation, we went around there to conduct a showup at the scene where the victim and witnesses were.

Id. at 14, 15, 16. According to Myers, he told Wood and Brozoski about the physical altercation with Candler after they "positively identified" him. Id. at 16, 20. Myers recounted the show-up procedure: Wood and Brozoski, standing five feet from the police car, positively identified Candler as the suspect through an untinted window, see id. at 17, 22, 28; they identified Candler by his face because they were in "close quarters" with him in broad daylight, just fifteen to twenty minutes before the show-up, see

id. at 17, 29; and they identified Candler without any hesitation, see id. at 28.

Wood testified that she identified Candler by his face because she "was within a foot of [him]," id. at 46, when she initially confronted him and conversed for over two minutes, see id. at 31, 33, 45. According to Wood, when Brozoski came outside to join the conversation, they both talked to Candler for five to ten minutes. See id. at 47.

> I was focused on your face. I would not forget the face. I wasn't focused fully on your clothing.
>
> . . . .
>
> I seen you walking down the street the first time, drew my suspicion, so I chained my dog up out front. My dog proceeded to bark. I come outside, look out my window. You're coming out from underneath Mr. Bruzawski's [sic] carport with the two weed eaters in your hand. Then I decided to come out and approach you.
>
> . . . .
>
> I asked you what did you think you were doing taking my neighbor's stuff because they were my best friends. I know everything they have because I have also borrowed it.

Id. at 32-33, 33. She testified that the show-up occurred within fifteen to twenty minutes of her conversation with Candler. See id. at 48.

> The cop pulled back up with you in the car. The cop came up there and said, "Can you positively identify this gentlem[a]n as the one who was just up here and stole the weed

eaters?" I therefore walked out to the car and looked in the car by myself and said, "Yes, this is the same gentlem[a]n." I walked back up towards the house and then Robert came out and identified you.

. . . .

We all came up to the police car individually and identified you. Afterwards when the police were getting our statements, having us fill out the reports, we were all together then. That was after we had already positively identified you individually. We were all standing together, writing on a piece of paper what had happened. That's when we all stated the fact that we knew that you were the same person that stole the weed eaters.

. . . .

And when the cops brought you back to identify you, you never got out of the car. They did not get you out of the car, so I identified you by your face not by your clothing.

Id. at 36, 42, 45. According to Wood, Officer Myers told her about the physical altercation with Candler after she had identified Candler as the suspect. See id. at 34, 35. Brozoski testified that he stood within two to three feet of Candler, as they spoke that day. See id. at 53. He recalled that he had described the suspect as a black male, approximately mid-forty or mid-fifty in age, clean cut with black shorts, a yellow hat, and a black or yellow tank top. See id. at 55.

Both Wood and Brozoski spoke with Candler for five to ten minutes that day, and therefore, had the opportunity to observe Candler's face and clothing while they conversed in broad daylight.

Wood initially confronted Candler, and both Wood and Brozoski inquired about Candler's presence on Brozoski's property. They were both duly focused on Candler and his responses. Candler presumably had their full attention as he told them he had permission to borrow the weed eaters. Wood and Brozoski's separate descriptions of Candler were similar; they both described the suspect as a black male wearing a hat, tank top and black shorts. Their descriptions matched Candler to the extent that he wore black shorts, was seen by another neighbor throwing off some of his clothes as he left the area, and was stopped less than a mile from the crime scene.[10] Moreover, both Wood and Brozoski identified Candler shortly thereafter and were certain about their identifications. Neither witness was persuaded by the other's identification of Candler since the police conducted separate show-ups.

The state court denied Candler's motion to suppress. See Resp. Ex. A at 102. In doing so, the trial judge stated:

> For the record I do find that the officers had reasonable suspicion for the stop on Mr. Candler and that the -- after the altercation they had probable cause to actually detain and arrest Mr. Candler. But even had they not, the detention to take him back to the showup was lawful and not unreasonably suggestive and the conditions of the showup were not unreasonably suggestive.
>
> I might add I don't think I have seen a more adamant witness in her positive identification of the suspect than Ms. Wood.

---

[10] See Supp. Tr. at 37, 38.

> So, I will deny the motion to suppress in-court and out-of-court identification of the defendant, and deny the oral motion to find that the stop was unjustified and unlawful. And I'll take that as a motion to suppress all of the evidence guarded [sic] as a result of that stop and I'll deny that motion.

Id. at 75-76.

On this record, even assuming that the show-up identification procedure was suggestive, the identification was reliable. The trial court properly denied Candler's motion to suppress, and no due process violation occurred. Thus, Candler is not entitled to federal habeas relief on ground one.

## B. Ground Two

As ground two, Candler asserts that counsel was ineffective because she failed to argue on direct appeal that the trial court erred when it denied his motion for judgment of acquittal as to dealing in stolen property. See Petition at 11-14. Candler raised the ineffectiveness claim in his state petition for writ of habeas corpus. See Resp. Ex. R. The appellate court ultimately denied the petition on the merits, see Resp. Ex. S, and later denied his motion for rehearing, see Resp. Exs. T; U.

As there is a qualifying state court decision, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to

clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Candler is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Candler's ineffectiveness claim is without merit. Candler has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. The State presented ample evidence to support Candler's conviction for dealing in stolen property. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of the evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). Jackson "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this authority, the relevant question is whether

any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. 319.

The Third Amended Information charging Candler with dealing in stolen property states, in pertinent part:

> KEVIN CANDLER on September 11, 2007, in the County of Duval and the State of Florida, did traffic in or endeavor to traffic in property of Eva Brozoski, to-wit, a pressure washer, that he knew, or should have known was stolen, contrary to the provisions of Section 812.019(1), Florida Statutes.

Resp. Ex. A at 87-88. At trial, the trial judge instructed the jury as follows:

> I will now define the elements of dealing in stolen property. To prove the crime of dealing in stolen property the state must prove the following two elements beyond a reasonable doubt: Number one, Kevin E. Candler trafficked in or endeavored to traffic in a pressure washer. Number two, Kevin E. Candler knew or should have known that the pressure washer was stolen.
>
> Proof of possession of property recently stolen unless satisfactorily explained gives rise to the inference that the person in possession of the property knew or should have known that the property had been stolen. Proof of the purchase or sale of stolen property at a price substantially below fair market value unless satisfactorily explained gives rise to the inference that the person buying or selling the property knew or should have known that it was stolen.

Tr. at 339-40. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Candler committed the crime of dealing in stolen property, and as such, the essential elements of the charged offense to support the conviction for dealing in stolen property. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses' accounts. See Tr. at 175-78, 180, 212-13, 215, 243-44, 256. Additionally, the jury heard Candler's testimony during trial, see id. at 275-76, 283, and therefore was entitled to make its own determination as to how he acquired the pressure washer. Given the record, the trial court did not err in denying Candler's motions for judgment of acquittal, see id. at 260, 292; the evidence was sufficient to justify the court's submission of the case to the jury as to dealing in stolen property; and the evidence at trial amply supported the elements required for a conviction as to dealing in stolen property.

Given the record, Candler has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner suggested by Candler. Accordingly, Candler's ground two is without merit since he has neither shown deficient performance nor resulting prejudice.

## C. Ground Three

As ground three, Candler asserts that counsel was ineffective because he failed to present "a more artful" motion for judgment of acquittal. Petition at 15. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. L at 5-12. The post-conviction court ultimately denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant alleges that counsel was ineffective because he did not present "artful" motions for judgment of acquittal as they pertained to Defendant's charge of Dealing in Stolen Property because the evidence was circumstantial, contradictory, and insufficient to prove he knew or should have known the items were stolen. Def. Mot. 5, 9. He also alleges that the Court "abused its discretion and committed reversible error by not granting the judgment of acquittal." Def. Mot. 11.
>
> It is well settled that a court will not grant a motion for judgment of acquittal "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974); see State v. Prehn, 566 So. 2d 1362, 1363 (Fla. 1st DCA 1990)(holding that purpose of motion for judgment of acquittal is to challenge sufficiency of evidence). When a defendant makes a motion for judgment of acquittal, he or she "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." Darling v. State, 808 So. 2d 145, 155 (Fla. 2002). When the state has brought forth competent evidence to support every element of the crime, a judgment of acquittal is not proper. Prehn, 566 So. 2d at

1363. If the evidence is contradictory, a court should not grant a motion for judgment of acquittal because it is the province of the jury to weigh the evidence. Williams v. State, 967 So. 2d 735, 755 (Fla. 2007); Fitzpatrick v. State, 900 So. 2d 495, 508 (Fla. 2005). Finally, when a case is built on circumstantial evidence, a court should deny a motion for judgment of acquittal if the state presents sufficient evidence to establish each element of the offense and excludes every reasonable hypothesis except guilt. Hunter v. State, 8 So. 3d 1052, 1066 (Fla. 2008).

To constitute dealing in stolen property, the evidence must establish that "[a]ny person who traffics in, or endeavors to traffic in, property that he or she knows or should know was stolen shall be guilty of" dealing in stolen property. § 812.019, Fla. Stat. (2007). It is essential that a defendant know that the property was stolen. M.L.K. v. State, 454 So. 2d 753, 755 (Fla. 1st DCA 1984).

The police arrested Defendant on September 13, 2007, after a witness called the police when Defendant attempted to steal garden tools from the home of Robert Brozoski ("Robert") and his mother, Eva. Karrina Nicole Wood testified that she saw Defendant leave Robert's carport with the weed eaters. (Ex. D. at 146-47.) According to Ms. Wood, Defendant told her he had permission to borrow the tools. (Ex. D. at 147.) She testified that she "told him no, he didn't, and I proceeded to walk up to Robert's door to get Robert, and [Defendant] followed and came with me." (Ex. D. at 147.) According to Ms. Wood and Robert, they talked to Defendant for approximately ten minutes. (Ex. D. at 148, 163.) When Robert called 911, Defendant left Robert's property. (Ex. D. at 148, 163-64.) Robert testified that Defendant had come to his home a few days before Defendant's arrest. (Ex. D. at 159.) According to Robert, Defendant asked "if a certain individual lived there." (Ex. D. at 159.) The State questioned Robert as follows:

Q: Did you know the person that this defendant was talking about?

A: No, I did not.

Q: Had anyone else ever come to your house asking about this person the defendant was talking about?

A: No, ma'am.

Q: Have you ever gotten any mail for the person this defendant was talking about?

A: No, ma'am.

(Ex. D. at 159-60.) Moreover, Eva testified that she had seen Defendant before when "he had gone up and down the neighborhood and came to our front door one day." (Ex. D. at 172.)

Robert testified that he discovered Eva's pressure washer was missing before Defendant's arrest on September 13, 2007. (Ex. D. at 164.) He also testified that he had not reported this to the police. (Ex. D. at 165.) Eva testified that she owned the pressure washer, that she pawned the pressure washer before January 26, 2007, and that she reclaimed the pressure washer on February 25, 2007. (Ex. D. at 176-78.) She also testified that she discovered the pressure washer was missing on September 12, 2007, and that she did not have time to report this. (Ex. D. at 176.) Finally, Eva stated that she stored the pressure washer in the carport with the weed eaters. (Ex. D. at 160, 164, 174- 76.) Neither Robert nor Eva gave Defendant permission to borrow the tools. (Ex. D. at 160, 173.)

Adam Ardizzoni, an officer with the Jacksonville Sheriff's Office, testified that Robert told him the pressure washer had been taken from the Brozoski residence. (Ex. D. at 211.) According to the officer, he then conducted a pawn transaction search and identified the pressure washer's serial

number. (Ex. D. at 211-12.) He found two
transactions involving this serial number, one
for Eva and one for Defendant, the latter
occurring when the pressure washer was missing
from the Brozoski residence. (Ex. D. at 212-
13.) The State presented the pawn transaction
forms Officer Ardizzoni uncovered to establish
that Defendant pawned Eva's pressure washer on
September 11, 2007, two days before his
arrest. (Ex. D. at 213-14.)

Defendant testified that he purchased the
pressure washer from his neighbor. (Ex. D. at
276, 283.) On cross-examination, Defendant
revealed that he had a bill of sale for the
purchase and that he never gave it to his
attorneys.

> Q: Do you have a receipt for that
> purchase?
>
> A: I had a bill of sale. Yes, I do.
>
> Q: Do you have it with you that I
> can see that?
>
> A: No, I don't, ma'am.
>
> Q: Have you provided that to your
> attorney?
>
> A: No, I haven't, ma'am. At the time
> that this happened I was
> incarcerated, so I couldn't provide
> –
>
> Q: You were arrested on September
> 13th, 2007.
>
> A: Yes, ma'am.
>
> Q: That's almost two years ago?
>
> A: Yes, ma'am.
>
> Q: And you haven't thought to
> provide that receipt to your
> attorney?

A: And, ma'am, I was still been [sic] incarcerated two thousand ...

Q: And you didn't have someone who could get a copy of that receipt to your attorney?

A: No, ma'am, because at that point I didn't know I was going to trial. I thought this would have been resolved by now.

. . . .

Q: And you came into this courtroom and in front of this Judge you received a copy of the formal charges against you. You had an attorney and you entered a plea of not guilty at that time?

A: Yes, I did.

Q: Okay. So since October 4th of 2007, you knew that you have been charged with these crimes?

A: Yes.

Q: And you knew that you had evidence that you believed would exonerate you of these crimes, correct?

A: I had a bill of sale, yes.

(Ex. E. at 283-84, 285.) Defendant went on to testify that he talked to his first attorney about the document but never gave it to the attorney because he never thought he would go to trial. (Ex. D. at 286-87.) The exchange continued:

Q: Don't you think today would have been an important day to provide that piece of paper to your attorney?

> A: Well, how could I as in 2007
> while I was locked up to get out of
> jail that they evicted me and all of
> my furniture and everything was
> gone, I guess I would-
>
> Q: Oh, now your receipt is gone.
>
> A: I would have done that if it
> wasn't for me being falsely accused
> of these charges.

(Ex. D. at 287.)

> Even in light of Defendant's allegation
> that he had a bill of sale for the pressure
> washer, the State presented sufficient
> evidence to contradict his allegation and to
> support the Court's denial of Defendant's
> motions for judgment of acquittal. See
> Ferguson v. State, 593 So. 2d 508, 511 (Fla.
> 1992). ("Although in hindsight one can
> speculate that a different argument may have
> been more effective, counsel's argument does
> not fall to the level of deficient performance
> simply because it ultimately failed."). The
> State presented competent evidence to support
> every element of the crime, thus, it was
> proper that the case went to the jury. Any
> additional argument by counsel would have been
> futile. See Willacy v. State, 967 So. 2d 131,
> 140 (Fla. 2007) (holding that counsel is not
> ineffective for making a futile objection);
> Vining v. State, 827 So. 2d 201, 213 (Fla.
> 2002) (holding that where Florida courts
> reject substantive argument, counsel is not
> ineffective for not making a meritless
> argument). Defendant is not entitled to
> relief.

Resp. Ex. L at 27-32 (footnote omitted). The appellate court

affirmed the court's denial of post-conviction relief per curiam,

see Resp. Ex. N, and later denied Candler's motion for rehearing,

see Resp. Exs. O; P.

To the extent that the state appellate court affirmed the post-conviction court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Candler is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Candler's claim, nevertheless, is without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S.

374, 381 (2005). Thus, Candler must establish that no competent attorney would have taken the action that counsel, here, chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Candler has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Candler has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had presented a "more artful" motion for judgment of acquittal. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

Accordingly, Candler is not entitled to federal habeas relief on ground three.

## D. Ground Four

As ground four, Candler asserts that counsel was ineffective because he failed to object to the trial court giving "a faulty jury instruction." Petition at 19. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. L at 13-16. The post-conviction court ultimately denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant alleges that counsel was ineffective for failing to object to a "faulty" jury instruction. Defendant bases his argument on the State failing "to introduce competent evidence inconsistent with the Defendant's theory of events ... " because he gave "an unrefuted explanation for having possession of the pressure washer." Def. Mot. 15-16.
>
> A "trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient." Rodriquez v. State, 919 So. 2d 1252, 1272 (Fla. 2005). The Court gave the standard jury instruction for Dealing in Stolen Property. (Ex. H.)[11] The evidence that Defendant stole the pressure washer and pawned it was sufficient to merit this instruction. Therefore, counsel would have made a futile objection had he objected to this jury instruction. See Willacy, 967 So.

---

11 See Resp. Exs. L at 90-91; A at 122.

2d at 140;[12] <u>Vining</u>, 827 So. 2d at 213.[13]
Defendant is not entitled to relief.

> Underlying Defendant's allegation that
> the jury instruction for Dealing in Stolen
> Property was "faulty" is his contention that
> the evidence was insufficient to support the
> instruction. As established above, a defendant
> cannot challenge the sufficiency of the
> evidence in a motion for postconviction
> relief. <u>See</u> <u>Betts</u>, 792 So. 2d at 590.
> Moreover, a defendant may not seek to avoid
> this procedural bar by couching his or her
> allegations in terms of ineffective assistance
> of counsel. <u>Arbelaez v. State</u>, 775 So. 2d 909
> (Fla. 2000); <u>Cherry v. State</u>, 659 So. 2d 1069
> (Fla. 1995); <u>Chandler v. State</u>, 634 So. 2d
> 1066 (Fla. 1994); <u>Swafford v. State</u>, 569 So.
> 2d 1264 (Fla. 1990). Under this analysis,
> Defendant's claim is procedurally barred.
> Nonetheless, even if Defendant's allegation is
> not procedurally barred, the Court has
> determined that he is not entitled to relief.

<u>Id.</u> at 33-34. The appellate court affirmed the court's denial of

post-conviction relief per curiam, and later denied Candler's

motion for rehearing.

To the extent that the state appellate court affirmed the

post-conviction court's denial on the merits, the Court will

address the claim in accordance with AEDPA's deferential standard

for federal court review of state court adjudications. After a

review of the record and the applicable law, the Court concludes

that the state court's adjudication of the claim was not contrary

to clearly established federal law, did not involve an unreasonable

---

[12] <u>Willacy v. State,</u> 967 So. 2d 131 (Fla. 2007).

[13] <u>Vining v. State</u>, 827 So. 2d 201 (Fla. 2002).

application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Candler is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Candler's claim is still without merit. The trial court instructed the jury on the presumption provided for in Florida Statutes section 812.022(2) and Florida Standard Jury Instruction (Criminal) 14.2.

> Proof of possession of property recently stolen unless satisfactorily explained gives rise to the inference that the person in possession of the property knew or should have known that the property had been stolen.[14]

Tr. at 340; see Resp. Ex. A at 122, Jury Instruction, Dealing in Stolen Property (Fencing). On this record, Candler has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance.

Assuming arguendo deficient performance by defense counsel, Candler has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the jury instruction. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

---

[14] See Fla. Stat. § 812.022(2) (2006).

Accordingly, Candler is not entitled to federal habeas relief on ground four.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Candler seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Candler "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Candler appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of October, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 10/25
c:
Kevin E. Candler, FDOC #J39509
Counsel of Record